IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL RICHARD CALLAHAN, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> COMMISSIONER, SOCIAL ) </br> SECURITY ADMINISTRATION, ) </br> ) </br> Defendant. ) | Civil Action No. 2:24-cv-1493 </br></br> Magistrate Judge Patricia L. Dodge |

## MEMORANDUM OPINION[1]

Plaintiff Carl Richard Callahan ("Callahan") commenced this action against the Commissioner of Social Security ("Commissioner") under 42 U.S.C. §§ 405(g) and 1386(c)(3). Callahan seeks judicial review of an unfavorable decision regarding his claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Callahan asks for the Commissioner's decision vacated and remanded for further review, while the Commissioner seeks to have the decision affirmed. Both parties have filed briefs in support of their respective positions. For the following reasons, the Court will grant summary judgment in the Commissioner's favor and affirm the denial of Callahan's claim for benefits.

**I.   Relevant Procedural History**

On December 9, 2021, Callahan filed applications for DIB under Title II of the Social Security Act and SSI under Title XVI of the Act. (R. 347-58.)[2] He alleged disability beginning on July 8, 2020, due to vision problems, stomach problems, problems with both knees, and back/neck

---

[1] This case was originally assigned to the Hon. Kim R. Gibson. (ECF No. 37.) In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct all proceedings in this case. The undersigned therefore has the authority to decide dispositive motions and enter final judgment.

[2] Citations to the record (ECF No. 5) are noted as "R." throughout this Memorandum Opinion.

problems. (R. 347, 350, 409.) His claims were initially denied on January 4, 2023 and again after reconsideration on March 28, 2023. (R. 174-78, 180-87.) Callahan appealed and later amended his disability onset date to August 28, 2021. (R. 368.) A hearing was held before Administrative Law Judge ("ALJ") Christian Bareford on October 17, 2023. (R. 38-65, 188.) ALJ Bareford issued an unfavorable decision on December 20, 2023. (R. 139-60.)

Callahan filed a request for review with the Appeals Council. (R. 255-56.) The Appeals Council issued an order on February 9, 2024 (R. 161-64), vacating the hearing decision and remanding the case to an ALJ for resolution of the following issue:

> The hearing decision does not contain an adequate evaluation of opinion evidence in assessing the claimant's residual functional capacity. An Administrative Law Judge will articulate the persuasiveness of all the medical opinions and prior administrative medical findings in the case record, including an explanation of how the Administrative Law Judge considered the factors of supportability and consistency (20 CFR 404.1520c and 416.920c). If the residual functional capacity assessment conflicts with an opinion from a medical source, the Administrative Law Judge must explain why the opinion was not adopted (Social Security Ruling 96-8p). The Administrative Law Judge found the claimant has the residual functional capacity to perform a range of light work with, in pertinent part, no restrictions on standing and/or walking and no accommodations for the use of an assistive device (Finding 5). In so finding, the decision indicates that the opinion of consultative examiner Melissa Walls, N.P., was partially persuasive (Decision, pages 9-10). However, Nurse Walls opined that the claimant requires the use of a cane to ambulate, though he can use his free hand to carry small objects while using it, and the use of a cane is medically necessary (Exhibit 6F, page 7). The decision does not address Nurse Wall's [sic] opinion that the use of a can[e] for ambulation is medically necessary or explain why the use of a cane was omitted from the residual functional capacity. Likewise, the decision does not explain why Nurse Wall's [sic] opinion that the claimant is limited to standing for two hours a day and walking for two hours a day was not adopted in the residual functional capacity. Further consideration is needed.

(R. 163.)

Another hearing was held (R. 66-88), and on August 14, 2024, ALJ Bareford issued a second unfavorable decision (R. 7-23). Callahan filed a request for review of the ALJ's decision (R. 345-46), which was denied by the Appeals Council on September 13, 2024, making the ALJ's

2

decision final agency action for purposes of judicial review (R. 1-6). Thereafter, Callahan filed this action.

II. **Relevant Factual Background**

    A. **Relevant Medical Evidence[3]**

On October 27, 2022, Callahan had a physical consultative examination with Melissa Walls, N.P. ("NP Walls"). (R. 846-63.) Callahan reported a history of bilateral knee pain with his knees sometimes giving out, causing him to fall. (R. 846-47.) He previously attempted injections to alleviate his pain but it was unsuccessful and not reattempted. He attended two sessions of physical therapy before stopping due to lack of funds. He used a cane to ambulate. Callahan further reported pain from a mass in his stomach and chronic neck and lower back pain. (R. 847.) He stated that he could complete household chores, shower, and dress himself. (R. 848.)

NP Walls' exam revealed Callahan to have a gait slow in cadence with reduced step length, an antalgic gait, the gait was the same with and without his cane, squat at 40 percent, unsteady tandem walk, and his stance was slightly wide based. She observed that he could walk on heels and toes, did not need assistance changing or getting on and off the exam table, and was able to rise from a chair without difficulty. (R. 849.) NP Walls further noted that Callahan exhibited abdominal tenderness, a positive straight leg raise test bilaterally when supine, estimated 80 percent grip strength bilaterally, and decreased strength at 3/5 in the upper and lower extremities. (R. 849-50, 861.) He also showed decreased range of motion in his shoulders; knee flexion-extension; hip forward flexion; cervical lateral flexion; cervical extension and cervical rotation; lumbar flexion-extension and lumbar lateral flexion; and right ankle dorsiflexion. (R. 858-59.)

---

[3] The record contains numerous medical records from the time period of October 2019 to April 2024. The parties' briefs focus primarily on the records and proffered opinions of Melissa Walls, N.P. and Edward Cook, OT.

NP Walls diagnosed Callahan with neck pain, back pain, bilateral knee arthritis, vision corrected with glasses, stomach problems, and obesity. (R. 850.) She opined the following work limitations: lifting and carrying occasionally up to 51 to 100 pounds and frequently at 21 to 50 pounds; sitting for 8 hours at a time and for a total of 8 hours, standing for 1 hour at a time and for a total of 2 hours; and walking for 1 hour at a time and for a total of 2 hours; he requires the use of a cane to ambulate, a cane is medically necessary, and he can use his free hand to carry small objects while using a cane; frequent manipulative; frequent use of foot controls; frequent postural activities; frequent environmental; a moderate noise level; and he cannot walk a block at a reasonable pace on rough or uneven surfaces. (R. 851-56.)

State agency physical consultant Floyretta Pinkard, MD reviewed Callahan's initial application for DIB. On November 4, 2022, Dr. Pinkard opined that Callahan was limited to a light exertion level with occasional climbing ramps/stairs; never climbing ladders, ropes, or scaffolds; frequent balancing and stooping; occasional kneeling and crouching; never crawling; and he should avoid concentrated exposure to hazards. (R. 96-97.) Upon reconsideration in March 2023, state agency physical consultant Robert Warner, MD affirmed the same light exertional residual functional capacity ("RFC")[4] with postural and environmental restrictions. (R. 121-23.)

Callahan was seen by his primary care provider Heather Lynn Trautman, CRNP ("CRNP Trautman") on February 14, 2024. CRNP Trautman opined that Callahan "would benefit from using a cane or other walking aid to improve ambulation and/or balance." (R. 1280.)

Edward Cook, OT ("OT Cook") performed an occupational therapy functional assessment of Callahan on June 28, 2024. (R. 1355-62.) Callahan reported knee pain for the past four years

---

[4] RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. § 404.1545(a)(1).

and falling four times since January 2024. (R. 1355-56.) He stated that the injections he received in his knee provided only short-term relief and that he used a cane for ambulation. He also reported "significant difficulty with walking, lifting groceries and getting in/out of bathtub." (R. 1356.) OT Cook's examination showed Callahan exhibiting an unsafe, unsteady gait pattern with a two-hand carry of 15 pounds and that he required supervision to complete the activity. (R. 1357.) Testing also showed a loss of balance with pulling activity, unsteadiness when standing to complete stooping and reaching activities, and he required upper extremity use with squatting. He successfully walked a distance of 250-feet independently and completed the full 330-foot walking assessment with use of a cane. He demonstrated an antalgic gait pattern and appeared unsteady when ambulating independently and consistently reported lower extremity symptoms with activity. (R. 1357-61.) Callahan self-reported a pain level of 8/10 pre-evaluation and 10/10 post-evaluation. (R. 1362.) Based on his assessment, OT Cook opined that Callahan was capable of performing at a sedentary level. (R. 1357, 1362.)

    **B. Hearing Testimony**

        1. <u>October 17, 2023 Hearing</u>

Callahan testified at the first hearing that he stopped working due to his knees giving out while walking. (R. 50.) He received gel injections in his knees but felt that his legs were still weak. It was hard for him to walk up and down steps and he could stand for about ten minutes before experiencing tingling in his feet and legs. He used a cane because he was afraid of falling. (R. 53.) His daughter helped him with shopping and laundry. (R. 54.) He had neck and back problems. (R. 55.) He was scheduled to have neck surgery in 2020 but canceled it because he was nervous about recovery while living alone. (R. 56.) He took medication prescribed by a pain clinic. The

medication reduced his pain when he was inactive but he got a pin-and-needle sensation when "walking around or standing for too long." (R. 58.)

### 2. July 2, 2024 Hearing

At the second hearing, Callahan testified that he had been using a cane for the past one to two years. (R. 75.) He could only stand for about ten minutes before he would "start swaying[.]" (R. 76.) Lifting and carrying a case of soda was difficult for him. His daughter brought him meals, cooked him dinner about four times a week, and helped him with cleaning and laundry. He left the house to go to the grocery store and to doctors' appointments. (R. 77.) He could perform an activity for about ten to fifteen minutes before having to sit down and rest for thirty to forty-five minutes because it "takes forever for the pins and needles [in his legs] to go away." (R. 79.)

Vocational expert Joseph Goodman also testified at the hearing. (R. 79-85, 87.) When asked to assume the hypothetical restrictions the ALJ ultimately adopted and included in the RFC, the expert ruled out Callahan's past job.[5] Mr. Goodman testified that an individual with Callahan's restrictions would be able to perform jobs with light level duty, including subassembler and production solderer. (R. 83.) Mr. Goodman also testified that the hypothetical limitations posed by the ALJ regarding use of a cane, balancing, climbing, and sitting/standing/walking were not specifically discussed in the Dictionary of Occupational Titles. He stated, however, that these limitations were nonetheless factored into his testimony based on his experience in the field. (R. 84-85.)

---

[5] Mr. Goodman described Callahan's prior job as "house repairer; that's 869.381-101; it's generally considered medium skilled work, SVP 7, however, based on Exhibit 4E, it looks like it was performed at the heavy level." (R. 80-81.)

### C. ALJ's August 14, 2024 Decision

Among other findings, ALJ Bareford determined that Callahan had not engaged in substantial gainful activity since August 28, 2021, the amended alleged onset date. (R. 13.) The ALJ also found that Callahan had severe impairments of lumbar and cervical degenerative disc disease, bilateral knee degenerative joint disease, obesity, hepatic steatosis, major depressive disorder, and generalized anxiety disorder. (R. 14-16.)

The ALJ concluded that Callahan did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment and that he had the RFC to perform light duty work with the following restrictions:

> occasionally climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasionally maintaining balance over narrow, slippery, or erratically moving surfaces; frequently stooping; occasionally kneeling and crouching; never crawling; no exposure to unprotected heights or work in close proximity to (i.e., within arm's reach of) dangerous moving mechanical parts; performing simple routine tasks; making simple work-related decisions; and tolerating few changes in a routine work setting defined as a stable work environment where the workplace and work process remain generally the same one-third of the time. The claimant requires use of a cane for maintaining balance and ambulation but is able to use his free hand to carry weights within the light level of exertion.

(R. 16.) The ALJ further concluded that considering Callahan's age, education, work experience, and RFC, there were other jobs of light duty that exist in significant numbers in the national economy that he could perform, including subassembler, bench assembler, and production solderer. (R. 22-23.)

### III. Legal Standard

"On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing § 405(g)). As the Supreme Court explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-

> evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.* It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Id.* at 102-03 (other citations omitted).

The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

To evaluate disability claims, the Commissioner uses a five-step sequential process. The process requires an ALJ to consider: (1) whether the claimant is doing "substantial gainful activity"; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals the listings in the regulations; (4) whether, considering the claimant's RFC and past relevant work, the claimant can still perform past relevant work; and (5) if not, whether considering the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to

other work. 20 C.F.R. § 404.1520(a)(4). *See Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014) (recounting the five-step process).

The claimant bears the burden of proof at steps one through four, including the determination of RFC, while the ALJ makes the ultimate disability and RFC determinations. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Zirnsak*, 777 F.3d at 611. At the fifth step, the Commissioner bears the burden of demonstrating that the claimant is able to perform work that is available in the national economy. *Bowen*, 482 U.S. at 146 n.5; *Zirnsak*, 777 F.3d at 612. *See* 20 C.F.R. § 404.1560(c)(2) ("we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors.")

## IV. Discussion

Callahan argues that the ALJ's RFC determination is unsupported by substantial evidence and the product of legal error where the ALJ improperly evaluated the medical opinions of NP Walls and OT Cook.

### A. Melissa Walls, N.P.

As to the opinion of NP Walls, the ALJ made the following conclusion:

> The opinion by the internal medicine consultative examiner, Melissa Walls, NP, is partially persuasive. NP Walls opines that the claimant is capable of lifting and/or carrying 100 pounds occasionally and 50 pounds frequently; standing and/or walking for two hours in an eight-hour workday for up to one hour at a time; sitting for up to eight hours in an eight-hour workday; frequently climbing ramps and stairs, as well as ladders or scaffolds; frequently balancing, stooping, kneeling, crouching, or crawling; frequently pushing/pulling and performing overhead reaching bilaterally; continuously performing other manipulative tasks; frequently operating foot controls bilaterally; no more than frequent exposure to unprotected heights, moving mechanical parts, operation of a motor vehicle, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme heat and cold, and vibrations. NP Walls opines that the claimant requires the use of a cane to ambulate, which is medically necessary. She opines that the claimant, with a cane, can use his free hand to carry small objects. (Exhibit 6F/6 – 10). NP Walls' findings during the

9

consultative examination are consistent with her opinions due to positive findings of gait issues, positive straight leg raising, and 3/5 strength in the upper and lower extremities. (Exhibit 6F/4 – 5). Other records support light exertion with postural and environmental limitations, as well as use of a cane as set forth in the claimant's residual functional capacity assessment. CRNP Trautman reported the claimant would benefit from using a cane or other walking aid to improve ambulation and/or balance. (Exhibit 20F/1). Other physical examinations are normal or generally unremarkable. (Exhibit 1F/5; 17F/16, 28, 40, 18F/4, 19F/1 – 2). Thus, the opinion is partially persuasive.

(R. 19-20.)

Callahan argues that the ALJ failed to adequately explain his consistency factor conclusions and provided unclear guidance to the reviewer with respect to NP Walls' medical opinion. He argues that the ALJ's citations to record evidence are insufficient to serve as substantial evidence to reject NP Walls' opinion that the RFC include a limitation on walking and/or sitting.

"Consistency" is an external check: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2). In making an RFC determination, the ALJ must consider all evidence in the record and "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 705(3d Cir. 1981)).

Here, the ALJ stated that although NP Walls' opinion was consistent with her consultative examination, other record evidence supported an RFC determination of light exertion with

additional limitations including the use of a cane. Evidence cited by the ALJ included records from an emergency room, orthopaedic specialist, pain management clinic, and Callahan's primary care provider. CRNP Trautman notes that Callahan "would benefit" from using a cane, not that a cane was medically necessary. (R. 20.) The ALJ also cited other tests and examinations that had been normal or generally unremarkable, including records showing that Callahan: presented with a normal gait in October 2019 (R. 525); stated that he was doing well and his knee had a "benign appearance" with "[n]o evidence of swelling, effusion, erythema or ecchymosis" over three evaluations by orthopaedic specialists administering Euflexxa injections in August 2023 (R. 1122, 1134, 1146); was being treated at a pain clinic for "some lateral recess stenosis at L4-5 and cervical imaging shows some moderate spondylosis at C5-6 and C6-7." (R. 1268); and presented with a normal gait in September 2023 (R. 1276).

Although Callahan argues that the ALJ impermissibly "skipped over" a large portion of exhibits when determining consistency, the ALJ is not required to specify whether NP Walls' opinion was consistent with every piece of evidence in the overall medical record. The ALJ must only have provided sufficient explanation of his consistency finding to permit this Court to conduct meaningful review. *See Burnett*, 220 F.3d at 120 (3d Cir. 2000). This burden has been met as to the ALJ's decision not to ultimately adopt the additional limitations on walking and/or sitting that NP Walls recommended in the RFC. The Court therefore finds no error in the ALJ's consistency analysis of NP Walls' opinion.

### B.  Edward Cook, OT

Callahan next argues that the ALJ erred by finding the opinion of OT Cook unpersuasive. As to the opinion of OT Cook, the ALJ made the following conclusion:

> The opinion by Edward Cook, OT, is not persuasive. OT Cook opines that the claimant is capable of performing sedentary activities safely. (Exhibit 27F/8). The

>    opinion is consistent with his findings during his examination. (Exhibit 27F/1 – 7). However, other records support light work. The claimant has at least light activities of daily living. The claimant lives alone and does not need help at home. He completes household chores including cooking and preparing foods, completing general cleaning, doing laundry, and driving. (Exhibit 6F/3, 7F/4). The claimant reported that he continues to walk his block as often as he can to get out and get fresh air. He noted that he walks almost every day. (Exhibit 13F/13). Thus, the opinion is not persuasive.

(R. 20.) Callahan argues that because the ALJ determined that OT Cook's opinion was consistent with his findings, he should have found the opinion at least partially persuasive.

The Commissioner argues that OT Cook's assessment cannot be viewed in a vacuum. Instead, the ALJ considered the opinion in the context of the overall medical record, ultimately finding that other records supported the RFC limitation to light work subject to additional modifications.

The Court agrees. The ALJ found OT Cook's opinion unpersuasive because it was inconsistent with other evidence in the record. This evidence includes records from NP Walls stating that Callahan "lives alone. He does not need help at home. . . . The claimant is able to complete household chores. The claimant is able to shower, bathe, and dress himself." (R. 848.) The ALJ also cites medical records from September 2022 that state, "Pt also noted he continues to walk his block as often as he can to get out and get fresh air. He noted he walks almost everyday." (R. 979.) Additional record evidence noted by the ALJ and previously discussed in this Memorandum Opinion also conflicts with OT Cook's opinion. *See* discussion *supra* Sec.IV.A.

The Court cannot undertake a de novo review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts are also prevented from "impos[ing] their own factual determinations." *Chandler*, 667 F.3d at 359; *see Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted

12

to weigh the evidence or substitute our own conclusions for that of the fact-finder."). Because the record contains substantial evidence—i.e., more than a "mere scintilla"—to support the ALJ's findings that OT Cook's opinion was inconsistent with other record evidence, the Court finds that the ALJ did not err in deeming OT Cook's opinions not persuasive. Although Callahan argues that other medical evidence could support OT Cook's opinion, the ALJ explained his finding with sufficient detail to indicate the reasons for his rejection of OT Cook's opinion that Callahan should be limited to a sedentary activity level.

**V.     Conclusion**

For the reasons explained above, the Court concludes that the ALJ's decision to deny Callahan's claim is supported by substantial evidence. Therefore, Callahan's Motion for Summary Judgment (ECF No. 9) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) is GRANTED, and the decision of the ALJ is affirmed.

Appropriate orders will follow.


December 16, 2025                                              BY THE COURT:


                                                               /s/ Patricia L. Dodge
                                                               PATRICIA L. DODGE
                                                               UNITED STATES MAGISTRATE JUDGE